### SACRAMENTO SUBURBAN FRUIT LANDS CO. v. JENSEN et al.

Circuit Court of Appeals, Ninth Circuit.
December 17, 1929.

No. 5693.

Butler, Van Dyke & Desmond, of Sacramento, Cal., and Arthur C. Huston, of Woodland, Cal., for appellant.

Ralph H. Lewis and George E. McCutchen, both of Sacramento, Cal., for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This is another of the Sacramento Suburban Fruit Lands cases.

In the present case exceptions were taken to the instructions given by the court in reference to two witnesses for the appellant and one witness for the appellee. In commenting on the testimony of the first witness for the appellant, the court said: "Moreover, there is testimony that their agent in Minneapolis made the same representations, Lindsay and Fotheringham, and while Fotheringham denies it in his deposition, Lindsay has not been called to testify in respect to the matter. Having made that representation in its book, it may point the way to determine whether Fotheringham made them in spite of his denials, because first in his deposition he says, 'I told them the same as in the book,' although later in the deposition he says he did not say anything about commercial orchard. If he told them what was in the book, he did. In presenting the case to the plaintiffs for the defendant, is it reasonable that he would tell them just what he was told by this book? He was seeking purchasers for defendant. Ask yourself what was reasonable in the circumstances, and remember, Gentlemen of the Jury, that reasonableness is a great test of the truth. If a principal sends out his agent armed with literature, literature like this, to persuade men and women to buy the land, it is very likely that the agent will repeat what was in the book. Fotheringham says he did, in the beginning, but later when the specific question was put to him as to that, 'Did you tell him about fruit?' 'No.'"

And in commenting on the testimony of the second witness:

"The defendant produces the testimony of another expert, Mr. Traxler, who proceeded to pass upon the value of the land and gives his reason to you which we will come to later, and says that in his judgment the land is adapted to the raising of fruit in commercial quantities.

"In weighing the testimony of any of these witnesses, you will have in mind their interest, if any, or their motive, if any. These real estate men who testified to values in this community might feel it to their interest to keep it up as high as possible. They are dealing in land, selling land, and commissions depend upon value of land. You may have that in mind in weighing the testimony of any expert, including Mr. Traxler. He said that he sold out, but he instantly said that he owned stock. I would interpret that that he sold his land to some company in which he owns stock, so he would still have that variety of interest and you may ask yourself whether his testimony, or

any other witness' testimony, is entitled to full credit when they manifest an interest in the case. Mr. Traxler testifies to orchards in that locality on land as shallow as this, 12, 18, 36 inches in depth, blasted, good drainage, ten years old, producing fine crops. He did assume to specifically pick out some. He said the Nelson orchard, land that had been his; he cannot say how much the trees produced, but says they were loaded, peaches, pears and prunes, the deciduous fruits. He says that Stout's land produces six tons of peaches to the acre. How he knows it, whether he weighed them or picked them or anything, we have no evidence, or whether it is something Stout told him. That is not disclosed."

Turning now to a witness for the appellee, the court said: "The plaintiffs' expert, Mr. Kerr, says at that time—for that is the test, at that time—the lands were not worth over fifty or seventy-five dollars an acre, something like that. That is Mr. Kerr's judgment, as a man engaged many years in the realty business, seventy-five dollars an acre in 1922. He says he took into consideration all these matters, the ability to raise poultry, small farm, close to town, diversified products, berries and the like, some fruit-trees, vegetables and the like. He says it has doubled in value since 1912 and you are asked to believe then it must be worth a couple of hundred dollars in value, because defendant paid one hundred dollars for it in 1912, but what the defendant paid is not necessarily its value. They may have paid more than its value at the time on the theory they might still make money out of it by selling at higher value."

The court returned to the testimony of the witness Traxler and added: "Traxler says it was three hundred and fifty dollars an acre. He had 1,800 acres south of Rio Linda which he was selling at five hundred dollars an acre, two hundred and fifty dollars an acre, and up, the same variety and character of land, and he says he has sold out now but has stock. In weighing his testimony, as I told you a while ago, take into consideration if he has any interest or motive to keep up the price of land higher than the real value, in determining his evidence." This was an attempt on the part of the court to discredit the witnesses for the appellant and disparage their testimony, while the testimony of the witness for the other side was commended. The language thus employed is the language of the advocate, not that fair and impartial presentation of the case which is absolutely indispen-

sable if the right of trial by jury is to be of any value to the citizen. See Sacramento Suburban Fruit Lands Co. v. Parker (C. C. A., No. 5680), 36 F.(2d) 926, just decided, and cases there cited.

Other rulings complained of are sufficiently covered by opinions in other cases this day filed.

The judgment is reversed, and the cause remanded for a new trial.